UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRI LORENZ, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE BOARD OF TRUSTEES CARPENTERS HEALTH & WELFARE TRUST FUND FOR CALIFORNIA, et al.,<br><br>    Defendants. | Case No. 15-cv-01430-WHO<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 56, 61 |

On cross-motions for summary judgment, defendants and counter-claimants the Board of Trustees of seven multi-employer pension and welfare fringe benefit Trust Funds (the "Trust Funds") and a labor organization (the Carpenters 46 Northern California Counties, the "Union")[1] and plaintiff and counter-defendant Terri Lorenz, the president of plaintiff and counter-defendant Bay Area Construction Framers, Inc. (BACF), contest whether Lorenz is liable for both the past due amounts owed by BACF and for future amounts it will owe under a collective bargaining agreement (CBA) because Lorenz signed a promissory note dated September 16, 2013 ("Note Three"). Because Note Three unambiguously makes Lorenz liable for the amount stated, she is liable for the past due amounts. But Note Three does not bind her to pay the future amounts owed by BACF because those obligations were not discussed in the negotiations for the Note (or for the previous notes that she executed), Note Three is unclear about her liability under the CBA, and it would be inequitable to impose such liability. Accordingly, I grant in part and deny in part each

---

[1] Defendants/Counter-Claimants are the Board of Trustees of the Carpenters Vacation and Holiday Trust Fund for California, Carpenters 46 Northern California Counties; the Carpenters Annuity Trust Fund for Northern California; Contract Work Preservation Trust Fund for Northern California; Carpenters Training Trust Fund for Northern California; the Carpenters Health & Welfare Trust Fund for California; Construction Industry Advancement Fund; and the Carpenters Pension Trust Fund for California.

side's motion, finding that Lorenz is personally liable for Note Three but not for the contributions of BACF otherwise required under the CBA.

## BACKGROUND

### I. FACTUAL BACKGROUND

The Trust Funds are employee benefit plans that provide health and welfare, vacation, pension, and other benefits for carpenters on whose behalf contributions are made by the contractors that employ them. Answer of Board of Trustees (Dkt. No. 11) ¶ 4. Each of the Trust Funds is administered by a Board of Trustees, which has the obligation to ensure that contributions made to the Trust Funds pursuant to collective bargaining agreements are made in full. *Id.*

Plaintiff and counter-defendant BACF is a "signatory employer" covered by a collective bargaining agreement with the Union, the Carpenters Master Agreement for Northern California (the "Master Agreement"). Declaration of Jarrod Mizusawa (Dkt. No. 58), ¶ 2. The Master Agreement by its terms incorporates the various trust agreements ("Trust Agreements") establishing each of the Trust Funds. *Id.* ¶¶ 4-5 & Ex. D. The Master Agreement required BACF to make payments to the Trust Funds for each hour its employees performed any work covered by the Master Agreement. *Id.* ¶ 5. BACF has never given notice to terminate its membership in the Northern California Contractors Association or its Collective Bargaining Agreements with the Union. *Id.* ¶ 4.

Lorenz is the president and a minority shareholder of BACF. Declaration of Terri Lorenz (Dkt. No. 67) ¶ 3. BACF's business consists of contracting work. Mizusawa Decl. ¶ 7. According to California Contractors State Licensing Board records, Lorenz is the Responsible Managing Officer, CEO, and president of BACF, and the only individual associated with the Contractor's License for BACF. *Id.*

In late 2012 and early 2013, BACF was experiencing financial difficulty and fell behind on its contributions to the Trust Funds. Lorenz Decl. ¶ 8; Mizusawa Decl. ¶¶ 8-9. BACF made late payments of fringe benefit contributions owed to the Trust Funds for work performed by its employees in October through December 2012, in exchange for "current status" letters indicating

that the fringe benefit contributions owed were paid. Mizusawa Decl. ¶¶ 8-10. BACF needed the current status letters to obtain progress payments from the developers BACF was working for. *Id*. Lorenz states that if BACF did not receive progress payments from the developers, there would have been insufficient funds to cover payroll as well as insufficient funds to cover obligations to the Trust Funds. Lorenz Decl. ¶ 8. The Trust Funds knew that the potential loss of the payments from the developers "would result in the end of BACF and, in turn, would result in long-time, valuable employees losing their jobs." *Id.*

In February and March 2013, BACF again fell behind on its fringe benefit payments. Lorenz asked the Trust Funds for additional "current status" letters, but the Trust Funds declined. Mizusawa Decl. ¶ 11. The Funds explained that they needed a payment plan in place before they could issue current status letters and gave Lorenz and BACF the choice of entering into a "joint check" agreement or executing a promissory note. *Id*. ¶ 13. Lorenz and BACF chose the promissory note, and Promissory Note One was agreed to in early April 2013, and signed by Lorenz on April 30, 2013. Mizusawa Decl. ¶ 16 & Ex. G. After receipt of certain payments under Note One, the Trust Funds issued current status letters. *Id.* ¶¶ 16-17. BACF again fell behind on payments, and the parties executed Promissory Note Two on June 27, 2013. *Id.*, Ex. H. Promissory Note Two contained identical language to Note One, except it provided for a different execution payment, required a lower monthly payment, and had a longer repayment period. *Id*.

After executing Note Two, BACF fell into a pattern of making late payments. Mizusawa Decl. ¶ 19. Lorenz asked the Trust Funds to execute a third promissory note that would lower the monthly payments owed under Note Two and include a longer repayment period. *Id.* ¶ 20. The Trust Funds forwarded Note Three to Lorenz by email on September 12, 2013, and it was executed by Lorenz and returned to the Trust Funds on September 16, 2013. *Id.* ¶ 20 & Ex. I.

Other than the specific payment provisions, each of the Notes contained identical terms, including the following:

> For value received, the undersigned promises to pay . . .
> . . .
> If the collective bargaining agreement (pursuant to which fringe benefit contributions referenced in this promissory note were to be

3

> paid by the undersigned to the Trust Funds) terminates, then the whole of the principal sum then remaining unpaid . . . shall . . . become due and payable . . . .
>
> Further, if the undersigned falls delinquent in payment of monthly contributions on behalf of employees performing work covered under the [Master Agreement], . . . the whole of the principal sum then remaining unpaid . . . shall . . . become due and payable . . . .
>
> Additionally, the undersigned agrees to remain current on all fringe benefit contributions, not yet due and payable, which become due and payable to the [Trust Funds] during the term of this promissory note. It is a material condition of this promissory note that **Employer** remain current on all such fringe benefit contributions and failure to do so shall constitute default.
>  . . .
>
> If incorporated, the individual and/or company (collectively referred to as Employer), acknowledge they and each of them are doing business as **BAY AREA CONSTRUCTION FRAMERS, INC.** (the corporation). The **Employer** acknowledges that they, and each of them, are individually liable, bound and subject to the [Master Agreement]. The **Employer** further agrees that they and/or each of them, as an individual signatory and/or other entity signed to this note are subject to the grievance procedure set forth in Section 51 of the Agreement and, specifically, that any dispute arising over the interpretation, application or enforcement of this promissory note may be grieved and arbitrated under that procedure, including any mechanism for enforcing an Arbitration Award in the event of non-compliance.
>
> In the event there is any dispute over the payment plan . . . such issue[] shall be submitted to the Permanent Neutral Arbitrator designated by the [Master Agreement] in accordance with the grievance procedure of said Master Agreement. No suit shall be filed to collect on said Promissory Note unless and until such matter is first presented to the arbitrator . . . .

Mizusawa Decl., Exs. G-I. The signature block on all three notes was for "TERRI LYNN LORENZ AS AN INDIVIDUAL & ON BEHALF OF BAY AREA CONSTRUCTION FRAMERS, INC."[2]

In the week following the entry of Note Three, Lorenz expressed her appreciation for the efforts of the Trust Fund in an email, recognizing that the "Trust Fund has gone way beyond what is normal protocol to accommodate our financial crisis." *Id.*, Ex. J. Lorenz declares now that the

---

[2] All three Notes were also signed by Kenneth Daniel Walker "as an individual & on behalf of Bay Area Construction Framers, Inc." As noted below, Walker has been dismissed without prejudice from this action.

4

Trust Funds "threatened BACF that absent BACF's execution of the notes, they would not provide those letters to those developers holding payments due to BACF and, therefore, no payments would be forthcoming from the developers." Lorenz Decl. ¶ 10. She asserts that she had "no meaningful choices. I either signed the promissory notes or faced the shutdown of BACF." *Id.* Lorenz also states that she did not believe that by signing the Notes, she was opening herself up to individual liability. Instead, she believed she was signing the Notes in her "individual capacity as an officer of BACF," never understood that the use of the word "individually" had any reference to her other than to her capacity as the president of BACF, and was not alerted by the Trust Funds that she was purportedly agreeing to individual liability under the Notes or the Master Agreement. *Id.* ¶¶ 13-16.

BACF continued to have difficulty paying the contributions owed to the Trust Funds under Note Three. Payments of the contributions owed for work performed by BACF's employees in the months of September 2013 through March 2014 were untimely, and multiple checks included "instructions" to "hold" a check until a specified date of clearance. Mizusawa Decl. ¶¶ 22-23. On or about May 8, 2014, Lorenz asked the Trust Funds to agree to another (fourth) Promissory Note to cover additional delinquent contributions accrued after execution of Note Three. *Id.* ¶ 24. The Trust Funds declined to enter into another Note. *Id.* Instead, the parties agreed to a "joint check" arrangement, where payments owed to BACF by a general contractor were made payable to the Trust Funds and BACF. *Id.* In return, the Trust Funds provided BACF with job specific current status letters or lien releases. *Id.*

After that agreement was entered, BACF paid late on contributions owed for work performed by its employees in April 2014, and then defaulted on payments for the months of March, May through December 2014, and January 2015, totaling $899,116.87. Mizusawa Decl. ¶ 25. Since BACF was in default under Note Three, the Union filed a grievance pursuant to the procedures in the Master Agreement on February 18, 2015. The Union alerted plaintiffs to the filing of the grievance, and the related hearing set for March 10, 2015. *Id.* ¶ 25. BACF and Lorenz sought a continuance of the grievance proceeding, to which the Union agreed. *Id.*

After the grievance was filed, BACF made several more payments towards its ongoing

1  fringe benefit obligations, but still owes $413,524.27 in contributions for March 2014 and May
2  2014 through January 2015, plus liquidated damages and interest. Mizusawa Decl. ¶ 26. The
3  amount still owed on Note Three is $443,586.15, plus $29,813.38 in interest. *Id.* ¶ 27.

## II. PROCEDURAL BACKGROUND

On March 3, 2015, Lorenz, Kenneth Walker (an employee of BACF), and BACF filed a Verified Complaint in state court against the Trust Funds and Union. The Complaint sought a declaration that Note Three was unenforceable and subject to revocation and/or rescission. In addition, the Complaint sought injunctive relief to prohibit the arbitration noticed by the Union from proceeding. On March 27, 2015, defendants removed this action to federal court.

On April 3, 2015, the Union and the Trust Funds filed their answers. Dkt. Nos. 9, 11. The Trust Funds assert counterclaims against Lorenz, Walker, and BACF under the LMRA, 29 U.S.C. §185, and ERISA, 29 U.S.C. §§ 1002(5), 1145, to collect delinquent fringe-benefit contributions. Dkt. No. 11.[3] The Trust Funds raise six claims for relief: (1) breach of contract-ERISA; (2) injunction-ERISA; (3) breach of promissory note; (4) actual damages-LMRA; (5) injunction-LMRA; (6) damages and equitable relief for breach of fiduciary duty. The parties filed cross-motions for summary judgment. The Trust Funds and Union argue that Lorenz and BACF's claims for declaratory relief and rescission fail, arbitration must be ordered under the Master Agreement, and the Trust Funds are entitled to the outstanding amounts due under the Master Agreement and Note Three (as well as damages, interest and fees) to be paid by Lorenz individually and/or BACF. Lorenz moves for summary judgment on the Trust Fund's First, Third, Fourth and Sixth counter-claims for relief, arguing that she is not individually liable under either Note Three or the Master Agreement.[4]

## LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

---

[3] On October 14, 2015, all parties stipulated that Kenneth Walker's claims against defendants and defendants' counter-claims against Walker were dismissed without prejudice. Dkt. No. 45.
[4] The Trust Fund's First and Fifth counter-claims seek injunctive relief under ERISA and the LMRA and are asserted only against BACF. Lorenz asserts that while BACF is still a corporation in good standing, it is no longer doing business. Lorenz Decl. ¶ 3.

that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

## DISCUSSION

There are two essential questions to answer on the cross-motions for summary judgment: is Lorenz personally liable for the amount stated in Note Three; and, is she liable under the CBA because she signed Note Three? While the parties conflate the issues in their arguments, the case law convinces me that the answer to one question is not the answer to the other. I also address and agree with the Trust Funds' assertion that Lorenz's declaratory relief claim for rescission fails as a

matter of law and that she is not entitled to injunctive relief prohibiting the arbitration from proceeding.

## I. LORENZ'S LIABILITY UNDER NOTE THREE

### A. Consent

Lorenz argues that she is not liable under Note Three because there was no meeting of the minds or consent on the issue of her individual liability for the unpaid fringe benefit contributions. Lorenz Motion for Summary Judgment (Dkt. No. 61) at 5. Under California law, the essential elements of a contract are: (i) parties capable of contracting; (ii) their consent; (iii) a lawful object; and (iv) a sufficient cause or consideration. Cal. Civ. Code § 1550. In turn, "consent" must be free, mutual, and communicated by each to the other. Cal. Civ. Code § 1565. "[I]n determining whether there has been a mutual consent to contract the courts are not interested in the subjective intent of the parties, but only in their objective intent – that is, what would a reasonable man believe from the outward manifestations of consent." *Leo F. Piazza Paving Co. v. Bebek & Brkich*, 141 Cal. App. 2d 226, 230 (1956).

Lorenz provides six reasons why she believes a reasonable woman would not have understood that she would be individually liable by signing Note Three: (i) the term "undersigned" refers to a singular entity, BACF ; (ii) the heading on each page of the Note refers only to BACF; (iii) operative terms in Note Three are written in the singular; (iv) Note Three is devoid of any reference to "joint and several liability"; (v) despite language identifying Lorenz "as an "[i]ndividual" Lorenz believed she was signing in her individual capacity as the President of BACF; (vi) the Trust Funds did not alert her to the possibility that she was agreeing to be personally liable, and neither advised her to seek counsel nor gave her enough time to do so. Lorenz Decl. ¶¶ 13-16.

The Trust Funds respond that because Note Three represents an agreement for payment of obligations due under the Master Agreement, federal law regarding formation of CBAs applies. According to the Trust Funds, the language personally binding Lorenz to the obligations under Note Three was explicit, and "ignorance of the language and its legal consequences" does not preclude a finding of mutual assent. The Funds rely on a line of Ninth Circuit labor cases which

hold that even though a party does not fully understand or fully comprehend the consequences of signing collective bargaining agreements, they are nonetheless still bound by them. Trust Funds Opposition to Lorenz Motion (Dkt. No. 70) at 10.

In *Operating Engineers Pension Trust v. Gilliam*, 737 F.2d 1501 (9th Cir. 1984), the court noted that principles of mutual assent apply to obligations under a collective bargaining agreement, but that under the National Labor Relations Act the collective agreements that emerge from a bargaining process are presumed to be the result of mutual assent and not legal compulsion. *Id.* at 1503. The court also recognized that a party "who signs a written agreement generally is bound by its terms, even though he neither reads it nor considers the legal consequences of signing it," but that proposition is "is qualified by the principle that he who signs a document reasonably believing it is something quite different than it is cannot be bound to the terms of the document." *Id.* at 1504.

In *Gilliam*, the defendant's unknowing signing of a short-form agreement did not create a binding collective bargaining agreement because there was no meeting of the minds. *Id*. There, unlike here, the defendant told the union representative that his intentions were to become an owner-operator member of the union (not a signatory employer to a CBA), and he subsequently relied on the representations made by the union's agent of which forms he needed to sign. *Id.* at 1503-04. Though he did not read the forms prior to execution, it was reasonable and justifiable under these circumstances for the defendant to believe that the forms he signed were simply for his owner-operator membership.

Here, however, there is no indication that Lorenz did not know that she was signing a promissory note. In fact, *she requested* it (and two prior notes) in order to allow her company to continue to operate in good standing with the Union and receive payments from general contractors. There is no evidence that the Trust Funds made any misrepresentation about Note Three concerning her liability for the past due amount or were attempting a "bait and switch" to get Lorenz's agreement to a contract which had a different purpose than she expected.[5] The

---

[5] In the next section, however, I find that the attempt to hold her liable under the CBA was a different purpose than she fairly could anticipate.

9

purpose was clear at all times; to secure a repayment schedule for past due contributions that would allow BACF to continue to operate. The undisputed facts are not the "unique" ones presented in *Gilliam*. There is no evidence that Lorenz was duped into signing a different agreement than the one she specifically asked for with respect to the repayment of past due amounts. If the Note had a consequence that Lorenz did not fully understand (*e.g.,* personal liability), that does not mean that she did not know what type of agreement she was signing.

In *Operating Engineers Pension Trust v. Cecil Backhoe Serv., Inc.*, 795 F.2d 1501 (9th Cir. 1986), the defendant signed two "short form" collective bargaining agreements that incorporated a Master Agreement in order to work on a union job. Defendant argued that there was a "lack of mutual assent" because he was not informed by the union agent and did not fully understand the consequences of signing the short form agreements. *Id.* at 1504. The Ninth Circuit explained that in the context of collective bargaining agreements, the fact that a signatory did not fully understand the consequences does not undermine the formation of the contract. Instead, the court reiterated that parties to a collective bargaining agreement are "conclusively presumed" to have equal bargaining strength and there is no authority for the proposition that union agents have a duty to explain to an employer the "terms, conditions, or consequences of a collective bargaining agreement." *Id.* at 1505. The court noted that defendant was familiar with union operations and had a "general understanding" of the operation of the agreements. *Id.* He could not credibly maintain, as in *Gilliam*, that he signed a document believing it was something else. *Id.*

Similarly, the court in *Employee Painters' Trust v. J & B Finishes*, 77 F.3d 1188 (9th Cir. 1996) held that the owner and president of a company who signed a "counterpart" agreement with the union binding the company to a collective bargaining agreement was personally liable pursuant to federal labor policy. *Id.* at 1190. The court enforced the personal liability provisions although Canon did not read or understand the agreement because these provisions were explicit and unambiguous, and there was no allegation of misrepresentation by the union agents. Furthermore, Canon was "familiar with the basic operation of [such] counterpart agreements." *Id.* at 1192.

Here, the personal liability provisions in Note Three are explicit and clear. The relevant

paragraph purporting to bind Lorenz in Note Three provides that: "the individual and/or company (collectively referred to as Employer) . . . acknowledges that they, and each of them, are *individually liable*, bound, and subject to the . . . Master Agreement . . . ." Note 3 at pg. 2 (emphasis added).  The signature block clearly indicates that Lorenz is signing "AS AN INDIVIDUAL & ON BEHALF" of BACF. *Id.* at pg. 3.  Lorenz does not claim that the Trust Funds misrepresented the nature of or the terms of Note Three.  And she was familiar with such agreements, given that this was the third promissory note with the same language that she signed.

Although Lorenz argues she did not fully understand the legal consequences of signing the Note, she bound herself to the agreement upon execution.  "Personal liability in such circumstances may be harsh for the signatory, but nothing suggests it is contrary to federal labor policy." *J & B Finishes*, 77 F.3d at 1192.  Ninth Circuit case law provides that "federal labor policy necessitates strict construction of the clear and specific terms of a labor agreement." *Id.* at 1191.  In accordance with a strict interpretation of the Note's explicit language pursuant to federal labor policy, the clear language of the Note supports the Trust Funds' position that Lorenz signed the note in her personal capacity, as well as on behalf of BACF.

The Trust Funds were not required to alert Lorenz to the personal liability provisions or its legal implications.  "Parties to collective bargaining agreements are conclusively presumed to have equal bargaining strength." *Cecil Backhoe*, 795 F.2d at 1504.  As such, there is no duty for union agents to explain to an employer the terms, conditions, or consequences of a collective bargaining agreement. *J & B Finishes*, 77 F.3d at 1192 (internal citations omitted).  Lorenz signed the Note that she requested in order to extend payment on BACF's past due contributions under the Master Agreement and allow BACF to continue to operate.  In this context, even though the Note is not itself a CBA, the federal policy underlying the presumptions of equal bargaining strength and no duty to explain the consequences of signing an agreement apply with equal force to Lorenz's renegotiation of the payment schedule required under the Master Agreement.

Finally, there is no merit to Lorenz's argument that she was not given sufficient time to review and seek counsel on Note Three.  She did not ask for more time before signing the Note. She had signed two previous notes with the same language, and she never sought to clarify the

11

meaning of any provisions or apparently felt the need to seek counsel before signing them. As a point of reference, the owner and president of the employer in *J & B Finishes* was held personally liable for contributions even though he was not even provided with copies of the collective bargaining or trust agreements prior to signing the counterpart agreement. *Id.* at 1190.

Unlike in *Gilliam*, Lorenz knew the purpose of the agreement she signed. Similar to *Cecil Backhoe* and *J & B Finishes*, that Lorenz did not fully comprehend the legal implications of signing the Note does not undermine consent. Finally, the language of Note Three (repeated from Notes One and Two) was clear; Lorenz agreed to the terms of Note Three "AS AN INDIVIDUAL & ON BEHALF OF" BACF. Note Three at 3. Her argument as to lack of mutual consent fails.

## B. Consideration

Lorenz also argues that Note Three is unenforceable because there was a failure of consideration. Under California law, consideration is defined as:

> Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.

Cal. Civ. Code § 1605; *see also* Cal. Evid. Code § 622 ("facts recited in a written instrument are conclusively presumed to be true as between the parties thereto, or their successors in interest; but this rule does not apply to the recital of consideration.").

Lorenz contends that because she received nothing for executing Note Three, and because the Trust Funds likewise received nothing of value or suffered any detriment, there was no consideration for Note Three. Lorenz Motion at 9-12.[6] She compares Note Three in this case with the note in *Tiffany & Co. v. Spreckels*, 202 Cal. 778 (1927). There, a contract providing for installment payments for a necklace was not signed by the person who was to make the

---

[6] The Trust Funds argue that there is a difference between "failure of performance," which invalidates a contract when a party fails to provide the required consideration, and "lack of consideration," which is an absence of consideration from the beginning and renders a contract invalid from its inception. While Lorenz uses the term "failure of consideration," her arguments are aimed at demonstrating a lack of any consideration, purportedly invalidating the Note. Lorenz Motion at 9-12; Lorenz Oppo. at 8-9.

1   installments, and the agreement did not prevent the plaintiff from immediately seeking relief for
2   non-payment for the necklace in court. *Id.* at 790. Any forbearance by plaintiff, therefore, was
3   purely voluntary.
4         Here, however, the Note binds both Lorenz and the Trust Funds. Lorenz and/or BACF
5   must make the required payments and any dispute over payments required by the Note would be
6   subject to arbitration. The undisputed facts demonstrate that whole point of the Note was to
7   provide a new repayment plan so that BACF could continue in business. The Trust Funds point
8   out that the consideration provided by Note Three was a more generous repayment plan to
9   Lorenz/BACF in exchange for the Trust Funds agreement to the "value" of the agreed monthly
10  payments, as well as the Funds' forbearance on the right to immediate collection. This is not
11  simply a voluntary agreement to forebear on the Trust Funds' rights to collect the outstanding
12  contribution payments, but an agreement for a longer repayment schedule (at the detriment of the
13  Trust Funds) and an agreement to forego other collection remedies. *See also Westphal v. Nevills*,
14  92 Cal. 545, 548 (1891) ("a detriment to the plaintiff – the time given to Hopkins within which to
15  make the payment – was sufficient consideration to support the promise of the appellant.").
16        Lorenz's argument on lack of consideration fails.

## II.  IS LORENZ LIABLE UNDER THE MASTER AGREEMENT FOR OTHER UNPAID CONTRIBUTIONS?

With regards to her liability to the Master Agreement, Lorenz makes similar arguments based on a lack of consent as with her liability under Note Three. She says that she did not believe she was binding herself to the CBA, so there was no meeting of the minds, and argues that the wording of the language purporting to make her personally liable to the Master Agreement is ambiguous and ambiguities should be interpreted against the drafter (the Trust Funds). Lorenz Opposition at 12-14. In their Opposition, the Trust Funds counter that a failure to understand the consequences of signing a document does not mean that there was no mutual assent and hence no contract, and argue that under the plain language of the Note, Lorenz is liable for the outstanding amounts due under the Master Agreement. Trust Funds Opposition at 10-12.

Unlike the amount stated in Note Three, discussed above, I find that Lorenz is not liable

13

1  under the Master Agreement as a matter of law because nothing in the context of the formation of
2  any of the three Notes supports a finding that Lorenz *or the Trust Funds* intended to bind Lorenz
3  to paying anything other than the past due contributions covered by the Notes, much less *all* future
4  contributions required under the Master Agreement.  The communications between the parties in
5  late 2012 and 2013 concern only BACF's unpaid contributions.  Lorenz Decl. ¶ 9; Mizusawa
6  Decl. ¶¶ 8 – 20. The Promissory Notes cover and set up payment schedules for *only* those past-due
7  contributions.  Mizusawa Decl., Exs. G, H, I.  Nothing in the circumstances surrounding the
8  negotiations of the terms of the Notes suggest that anything other than payment of the past-due
9  contributions was being discussed.

10  Note Three is also ambiguous.  While there is *general* language in the Notes that the
11  Employer ("they, and each of them, are individually liable") would be "bound" to the Master
12  Agreement, the *more specific* language deals only with payments for past-due contributions and
13  explains that if the "undersigned" fall delinquent on fringe benefit payments, all monies owed
14  under the Note will be due and payable at the Trust Funds' election and the undersigned will be
15  considered in default *under the Note*.  There is no specific language in the Note that the signatories
16  to the Note will also be liable for any not-yet-due contributions.

17  The attempt to bind Lorenz to the Master Agreement absent any discussion of the same
18  between the parties during the negotiation of the Notes, as well as any specific language in the
19  Notes that would make that obligation clear, runs afoul of the principles explained in *Gilliam*.
20  Lorenz requested, needed, and understood Note Three to be necessary to set up a payment
21  schedule for the past-due contributions, but there is no indication that Lorenz knew she was
22  making herself individually liable for all other contributions under the Master Agreement on an
23  ongoing basis.  As in *Gilliam*, Lorenz explained to the Trust Fund her need for the Notes and
24  repayment schedules for the past-due contributions.  The fact that the Trust Fund then presented
25  her with an agreement that purportedly goes much further and serves a wholly different purpose –
26  without pointing that fact out to Lorenz – bring this aspect of the case within the confines of
27  *Gilliam*.  Lorenz was an unrepresented minority shareholder and officer of BACF when she signed
28  Note Three.  It would be inequitable to make her liable for all of BACF's future liabilities under

the CBA under these circumstances.

## III. LORENZ'S DECLARATORY RELIEF CLAIM FOR RESCISSION OF THE NOTE

In their motion, the Trust Funds move for summary judgment on Lorenz's declaratory relief claim for rescission of Note Three.[7]  Trust Funds Motion at 14-17.  Under California Civil Code section 1689, a contract may be rescinded where consent was "given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds . . . ."  According to the Trust Funds, Lorenz has failed to allege any facts in support of her claim that Note Three was executed under economic duress or otherwise.  Trust Funds Motion at 16.

Economic duress occurs when a person subject to a "wrongful act," such as a threat to withhold payment of an acknowledged debt, must succumb to the demands of the wrongdoer or else suffer financial ruin.  *Sheehan v. Atlanta Int'l Ins. Co.*, 812 F.2d 465, 469 (9th Cir. 1987).  Lorenz claims she was under economic pressure because without payment from the developers, there were insufficient funds to cover BACF's payroll.  Lorenz Motion at 17.  In addition, Lorenz argues that there was "pressure from coercion or threats," because the Trust Funds stated that they would not provide the status letters she needed to obtain payment from the developers without BACF's execution of the promissory notes.  *Id.*

These contentions do not identify any wrongful act by the Trust Funds that would sustain a claim for economic duress.  Under section 502 of ERISA, the Trust Funds not only had a lawful right but a fiduciary duty to collect any delinquent trust fund contributions.  Furthermore, the evidence indicates that the Trust Funds made efforts to accommodate BACF's financial difficulty.  For example, the Trust Funds agreed to Note Three to benefit BACF (to lower the monthly payments owed under Promissory Note Two).  Mizusawa Decl. ¶ 20.  Lorenz expressed gratitude for "all that the Trust Fund has done . . ." and "gone way beyond what is normal protocol to

---

[7] In their motion, the Trust Funds also argue that Lorenz's request for injunctive relief, to prevent the Union's arbitration action from going forward, should be denied.  Trust Funds Motion at 17-18.  Neither Lorenz nor the Trust Funds address what, if anything would be left for resolution in arbitration if I conclude that Lorenz is liable for the Note but not otherwise bound by the Master Agreement.

15

accommodate [BACF's] financial crisis." *Id.* ¶21. In light of this and my conclusions above, I find that Lorenz's claim for rescission of the Note fails as a matter of law.

## CONCLUSION

The parties' cross-motions for summary judgment are granted in part and denied in part. Lorenz is personally liable for the amounts due under Note Three, but not for contributions otherwise due under the Master Agreement. A Case Management Conference is set for **May 10, 2016** at 2:00 p.m. in Courtroom 2. In their Case Management Conference Statement, the parties shall address what issues, if any, remain for resolution by the Court following this Order and the April 27, 2016 settlement conference.

**IT IS SO ORDERED**.

Dated: April 6, 2016

WILLIAM H. ORRICK
United States District Judge